**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PHARO GAIA FUND, LTD.,
PHARO MACRO FUND, LTD., and
PHARO TRADING FUND, LTD.,

Plaintiffs,

v.

PETRÓLEOS DE VENEZUELA, S.A.,

Defendant.

Case No. 23-cv-10071-JSR

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE DEFAULT JUDGMENT AND VOLUNTARILY DISMISS CLAIMS WITHOUT PREJUDICE**

GIBSON, DUNN & CRUTCHER LLP
Matthew D. McGill
MMcGill@gibsondunn.com
Nick Harper (*pro hac vice*)
NHarper@gibsondunn.com
1700 M St., N.W.
Washington, DC 20036
(202) 887-3680

*Counsel for Plaintiffs Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., and Pharo Trading Fund, Ltd.*

## TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Procedural History ........ 2

B. U.S. Sanctions And Both Venezuela And PDVSA's Refusal To Pay Have Rendered Plaintiffs' Judgments Effectively Worthless ........ 3

ARGUMENT ........ 5

I. Extraordinary Circumstances And Undue Hardship Favor Vacatur ........ 6

II. The Other Subsections Of Rule 60(b) Are Inapplicable ........ 7

III. Plaintiffs' Motion Is Timely ........ 8

IV. The Court Should Dismiss This Case Without Prejudice ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*D'Alto v. Dahon Cal., Inc.*,
100 F.3d 281 (2d Cir. 1996)....................9

*Freedom Mortg. Corp. v. Astudillo*,
2024 WL 4350336 (E.D.N.Y. Aug. 23, 2024)....................9

*Grace v. Bank Leumi Tr. Co. of NY*,
443 F.3d 180 (2d Cir. 2006)....................8

*Jaskot v. Brown*,
167 F.R.D. 372 (S.D.N.Y. 1996)....................9, 10

*Lasky v. Cont'l Prods. Corp.*,
804 F.2d 250 (3d Cir. 1986)....................7

*Ryan v. U.S. Lines Co.*,
303 F.2d 430 (2d Cir. 1962)....................8

*Stevens v. Miller*,
676 F.3d 62 (2d Cir. 2012)....................6

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
864 F.3d 172 (2d Cir. 2017)....................8

*United Airlines, Inc. v. Brien*,
588 F.3d 158 (2d Cir. 2009)....................6, 7

*United States v. Cirami*,
563 F.2d 26 (2d Cir. 1977)....................6, 7

*Viera v. United States*,
595 F. Supp. 3d 1 (S.D.N.Y. 2022)....................9, 10

**Rules and Regulations**

Fed. R. Civ. P. 41(a)(2)....................9

Fed. R. Civ. P. 60(b)....................5, 6, 7, 8

Fed. R. Civ. P. 60(c)....................6, 8

31 C.F.R. § 591.407....................4

**Other Authorities**

Exec. Order No. 13692 (Mar. 8, 2015)....................3

Exec. Order No. 13884 (Aug. 5, 2019)....3

OFAC, General License No. 9H (Oct. 18, 2023)....5

OFAC, General License No. 41B, "Authorizing the Wind Down of Certain Transactions Related to Chevron Corporation's Joint Ventures in Venezuela" (Mar. 24, 2025)....4

Virginia López & Sibylla Brozinsky, *US Hits Nicolás Maduro with Sanctions After Venezuela's 'Sham' Election*, Guardian (July 31, 2017)....4

**INTRODUCTION**

In March 2024, Plaintiffs Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., and Pharo Trading Fund, Ltd. obtained a default money judgment against Defendant Petróleos de Venezuela, S.A. (PDVSA)—Venezuela's state-owned oil company and alter ego—based on the company's failure to make contractually mandated payments on four series of notes. That judgment is one of three that Plaintiffs have obtained since 2020 to enforce Venezuela's debt obligations. But the theoretical benefits that should have accrued to Plaintiffs from these judgments have failed to materialize in reality. Since obtaining the judgments, Plaintiffs have diligently pursued extensive enforcement efforts to try to enforce them. But those attempts have been stymied by unforeseen circumstances outside Plaintiffs' control. Sanctions imposed by the U.S. government not only bar Plaintiffs from collecting on those judgments but also adversely affect Plaintiffs' ability to transfer the underlying notes, including even to use them as part of their ordinary financing activity in the repo market. Moreover, a long-anticipated auction of valuable Venezuelan assets in Delaware federal court will not attract a sufficiently large bid to compensate Plaintiffs despite their longstanding participation in that proceeding. All the while, the judgments remain unpaid.

These extraordinary circumstances compel Plaintiffs to ask this Court to vacate their default judgment against PDVSA under Rule 60(b)(6) and thereafter dismiss the underlying claims without prejudice under Rule 41(a)(2). This relief is unusual but necessary under the circumstances, as it is now clear that Plaintiffs' judgment against PDVSA works only to obstruct their efforts to obtain some value on their long-held notes. Vacatur and dismissal will not prejudice PDVSA. To the contrary, PDVSA will *benefit* from the relief Plaintiffs seeks. PDVSA already has sought (and obtained) vacatur of a substantially similar default judgment entered by this Court in another case on the same day as Plaintiffs' default judgment. Moreover, dismissal without prejudice is consistent with the approach PDVSA has adopted in other New York courts to dispose

of similarly situated bondholder suits. Plaintiffs therefore respectfully request that his Court vacate their default judgment and dismiss this case without prejudice.

## BACKGROUND

### A. Procedural History

As this Court is aware, Venezuela and PDVSA defaulted on their debts starting in late 2017 and have failed to repay them ever since. Since then, Plaintiffs have obtained three judgments against Venezuela and PDVSA, the country's state-owned oil company and alter ego, to enforce their debt obligations. In 2020 and 2021, Plaintiffs obtained two separate judgments against Venezuela for its breach of contractual obligations on various series of sovereign bonds. *See Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela* (*Pharo I*), No. 19-cv-3123 (S.D.N.Y. Oct. 16, 2020), ECF 62; *Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela* (*Pharo II*), No. 20-cv-8497 (S.D.N.Y. Oct. 25, 2021), ECF 34.[1]

Plaintiffs then filed this case against PDVSA in October 2023. ECF 1. Plaintiffs alleged that PDVSA was in breach of its contractual obligations on four series of notes beneficially held by Plaintiffs—the 6.00% 2024 Notes, 6.00% 2026 Notes, 5.375% 2027 Notes, and 5.5% 2037 Notes. Plaintiffs served PDVSA consistent with the Foreign Sovereign Immunities Act, but PDVSA failed to appear. Plaintiffs therefore filed a motion for default judgment. ECF 18.

In March 2024, this Court granted Plaintiffs' motion for default judgment. The Court held that PDVSA had waived sovereign immunity and breached its contractual obligations, and that Plaintiffs were entitled to damages. ECF 24.

In March 2024, the Court entered a final default judgment in favor of Plaintiffs. ECF 34. The judgment awarded Plaintiffs a total of $315,487,599.80 in unpaid principal and accrued

---

[1] Plaintiffs have moved to vacate these two judgments.

contractual interest, plus post-judgment interest and attorneys' fees. *Id.* In June 2024, counsel for PDVSA entered appearances in this case, ECF 27, 28, and soon thereafter informed Plaintiffs that PDVSA intended to move to vacate the default judgment. PDVSA has not yet done so, though in another case it successfully moved to vacate a similar default judgment entered by this Court on the same day as Plaintiffs' judgment. *See G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.* (*G&A*), No. 23-cv-10772 (S.D.N.Y. Aug. 1, 2024), ECF 46.

**B. U.S. Sanctions And Both Venezuela And PDVSA's Refusal To Pay Have Rendered Plaintiffs' Judgments Effectively Worthless**

Since Plaintiffs obtained their first judgment against Venezuela in 2020, both Venezuela and PDVSA (Venezuela's alter ego) have failed to comply with their obligation to pay Plaintiffs. Plaintiffs have made every effort to enforce their judgments against Venezuela and PDVSA, including by engaging in wide-ranging post-judgment discovery that resulted in (for example) multiple protective orders and litigation in other courts. *See, e.g.*, *Pharo I*, ECF 81; *Pharo I*, ECF 89; *see also Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. N21M-06-084 (Del. Super. Ct. Aug. 20, 2021).

Plaintiffs' enforcement efforts, however, have been stymied not only by Venezuela's and PDVSA's failure to pay, but also by ever-expanding U.S. sanctions against Venezuela and PDVSA. The U.S. government began with targeted sanctions. In 2015, for example, the government sanctioned particular Venezuelan officials, including those responsible for "actions or policies that undermine democratic processes or institutions" in Venezuela. *See* Exec. Order No. 13692 (Mar. 8, 2015). By 2019, however, the government had "blocked" "[a]ll property and interests in property of the Government of Venezuela [including PDVSA] that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person." Exec. Order No. 13884 (Aug. 5, 2019). Under

implementing regulations issued by the Office of Foreign Assets Control, those sanctions prohibit the "enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect" Venezuela's or PDVSA's property or "interests in" that property. 31 C.F.R. § 591.407.

These sweeping sanctions were widely viewed as an effort by the U.S. government to effect a regime change in Venezuela. *See* Virginia López & Sibylla Brozinsky, *US Hits Nicolás Maduro with Sanctions After Venezuela's 'Sham' Election*, Guardian (July 31, 2017), https://tinyurl.com/5b7u2f76. It was expected that, following a regime change, sanctions would be removed and Venezuela and PDVSA would restructure their debts. Regime change has not occurred and remains unlikely, and sanctions have persisted for years—and even recently been strengthened.[2]

Under OFAC's sanctions regime, the only way for a U.S. person to enforce a judgment against Venezuela or PDVSA is to secure a specific license from OFAC—which is entirely within OFAC's discretion to grant. To date, Plaintiffs are aware of only one specific license that OFAC has issued with respect to attachable property of Venezuela or PDVSA. That license authorized attachments of the shares of CITGO's holding company, PDVH, in Delaware federal court. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* (*Crystallex*), No. 1:17-mc-00151-LPS (D. Del. May 5, 2023), ECF 555.

Within months of that license being made public, before this suit was filed, Plaintiffs registered their judgments against Venezuela in Delaware federal court and sought and obtained attachments of the PDVH shares. *See Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. 23-mc-360-LPS (D. Del. Aug. 2, 2022), ECF 1. Since then, Plaintiffs have diligently

---

[2] *See* OFAC, General License No. 41B, "Authorizing the Wind Down of Certain Transactions Related to Chevron Corporation's Joint Ventures in Venezuela" (Mar. 24, 2025), https://tinyurl.com/yxvy9tmf.

participated in the ongoing sale process in that court. *See Crystallex*, ECF 679, 745, 778, 809, 1030, 1122. Nevertheless, it has become clear that Plaintiffs are exceedingly unlikely to obtain any relief from the auction of the PDVH shares. The creditors ahead of Plaintiffs in the waterfall hold around $18 billion in judgments against Venezuela and PDVSA, *see Crystallex*, ECF 789-1, but the recently proposed bid offers come nowhere close to that amount, *Crystallex*, ECF 1596, at 15 (proposed bid of $3.7 billion in cash for satisfaction of judgment holders). With that avenue to relief closed, Plaintiffs' judgments have become essentially worthless.

In fact, the judgments are actively harming Plaintiffs and their investors, which include many state and local pension plans, by making it more difficult for Plaintiffs to trade the underlying notes or use them in the ordinary course as a financing tool in the repo market. Because a portion of the debt originally evidenced by the PDVSA notes has merged into the judgment, Plaintiffs' notes are not fungible with notes of the same series that are unencumbered by a judgment. To get the full bundle of creditor rights, a transferee of Plaintiffs' notes would also need to take an assignment of the judgment. Although OFAC has issued a general license authorizing secondary-market trading of Venezuelan bonds and the PDVSA notes, *see* OFAC, General License No. 9H (Oct. 18, 2023), https://tinyurl.com/5x4fcbjp, OFAC has refused to clarify whether it views the assignment of a judgment against PDVSA, the alter ego of Venezuela, as prohibited by sanctions. The judgment is therefore limiting Plaintiffs' current ability to deal efficiently with the notes. It is also unlikely that Plaintiffs' status as a judgment creditor would provide any benefit in a future restructuring of PDVSA's or Venezuela's external debt, because Venezuela's stated policy is to treat judgment creditors no different than other creditors in a restructuring. *See Pharo I*, ECF 44-1, at 2.

**ARGUMENT**

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party … from a final judgment," and lists six grounds for relief. Plaintiffs seek to vacate their judgment under

Rule 60(b)(6), a catch-all provision authorizing vacatur for "any other reason that justifies relief" not encompassed within the first five subparts of Rule 60(b). Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) thus contains "a grand reservoir of equitable power to do justice in a particular case." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quotation omitted). "Relief is warranted where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (quotation omitted). A movant must also seek relief "in a timely fashion and assert[] a ground justifying relief that is not a ground encompassed within any of the first five clauses." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977); Fed. R. Civ. P. 60(c). Plaintiffs meet all of those requirements.

## I. Extraordinary Circumstances And Undue Hardship Favor Vacatur

To obtain vacatur under Rule 60(b)(6) a party must establish either "extraordinary circumstances" or that "the judgment may work an extreme and undue hardship." *Brien*, 588 F.3d at 176. Plaintiffs have made both showings here.

The circumstances justifying vacatur in this case are extraordinary by any stretch. Most Rule 60(b)(6) cases involve a party seeking relief from a judgment entered *against* them. *See, e.g.*, *Brien*, 588 F.3d at 176. Here, however, Plaintiffs seek relief from a default money judgment entered *in their favor*. That unusual request is the product of unprecedented circumstances. As discussed, a combination of Venezuela and PDVSA's failure to pay and the unforeseeably prolonged and stringent U.S. sanctions against them have rendered Plaintiffs' judgment practically worthless. That is not for lack of diligence on Plaintiffs' part. Plaintiffs have been seeking to enforce their judgments for years. They conducted wide-ranging and years-long post-judgment discovery, and participated in the only enforcement proceeding that has been licensed by OFAC. *See supra* at 3-5. Yet they have been repeatedly rebuffed by the kind of "unforeseen

contingencies" that Rule 60(b)(6) was designed to accommodate. *Lasky v. Cont'l Prods. Corp.*, 804 F.2d 250, 255 n.9 (3d Cir. 1986).

Plaintiffs also are in the highly unusual situation of suffering "extreme and undue hardship" from a judgment entered in their favor. *Brien*, 588 F.3d at 176. As explained above, U.S. sanctions not only prevent Plaintiffs from enforcing their default judgment—but also make it more difficult to transfer the underlying notes or use the notes as part of their ordinary financing activity in the repo market. To get the full bundle of creditor rights, a transferee of Plaintiffs' notes would also need to take an assignment of the judgment, and OFAC refuses to clarify whether a judgment against PDVSA can be assigned consistent with sanctions. *See supra* at 4-5. The resulting lack of liquidity due to OFAC's refusal greenlight an assignment of the judgment harms Plaintiffs. That acute hardship also makes this a heartland Rule 60(b)(6) case.

## II. The Other Subsections Of Rule 60(b) Are Inapplicable

Plaintiffs are seeking vacatur because their default money judgment, rendered effectively worthless by PDVSA's nonpayment and indefinite U.S. sanctions, materially and adversely affects their ability to deal with the notes in the secondary market and the repo market. This is clearly "not a ground encompassed within any of the first five clauses" of Rule 60(b). *Cirami*, 563 F.2d at 32; *Brien*, 588 F.3d at 175.

Plaintiffs do not assert the kind of "mistake, inadvertence, surprise, or excusable neglect" that justifies Rule 60(b)(1) relief. Fed. R. Civ. P. 60(b)(1); *Brien*, 588 F.3d at 175 (Rule 60(b)(1) is designed to "correct legal errors by the court"). Nor could Plaintiffs seek relief under Rule 60(b)(2), (3), or (4): They are not relying on "newly discovered evidence" that calls into question the legal basis for the judgment, asserting that the judgment was procured through "fraud … misrepresentation, or misconduct by an opposing party," or claiming that the "judgment is void." Fed. R. Civ. P. 60(b)(2), (3), (4).

Rule 60(b)(5) is also inapplicable. It authorizes vacatur if the "judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Second Circuit has held that Rule 60(b)(5) applies only to forward-looking injunctive orders and "does not cover the case of a judgment for money damages" like this one. *Ryan v. U.S. Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962). The lack of any other basis under Rule 60(b) for the relief Plaintiffs are seeking here confirms that Plaintiffs have established extraordinary circumstances warranting vacatur.

## III. Plaintiffs' Motion Is Timely

Plaintiffs' motion is also "made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Timeliness under Rule 60(c) depends upon "the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quotation omitted). Here, those considerations favor vacatur.

*First*, the reason Plaintiffs have waited to seek vacatur is that they have been diligently attempting to enforce prior, related judgments against Venezuela and PDVSA. In assessing timeliness, courts "are interested less in the number of years from the time of judgment, than [they] are in what has happened in between." *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 191 (2d Cir. 2006) (vacating judgment more than five years after its entry). And in this case, what has "happened in between" is years of exhaustive enforcement efforts that have not borne fruit because of Venezuela and PDVSA's nonpayment and sweeping U.S. sanctions. It would be perverse if Plaintiffs' diligent enforcement efforts counted *against* them here; a defendant should not be more secure against vacatur the longer it successfully evades enforcement of a money judgment.

*Second*, vacatur of the judgment will not prejudice PDVSA. To the contrary, vacating the money judgment can only benefit PDVSA by relieving it of a court order requiring it to pay

hundreds of millions of dollars. *See, e.g.*, *Freedom Mortg. Corp. v. Astudillo*, 2024 WL 4350336, at *4 (E.D.N.Y. Aug. 23, 2024) (no "prejudice" to defendant from vacating judgment "given that the judgment as it stands benefits Plaintiff, the moving party here, and disadvantages" defendants). Indeed, PDVSA has successfully vacated a similar default judgment entered on the same day as Plaintiffs' judgment here. *G&A*, ECF 59. As discussed below, moreover, Plaintiffs are seeking to immediately dismiss their claims without prejudice, which would leave the parties in the same position they were in before Plaintiffs filed suit. PDVSA therefore has no valid basis for claiming prejudice here.

*Third*, the "public interest in preserving the finality of the judgment and the development of decisional law" is at its nadir here. *Viera v. United States*, 595 F. Supp. 3d 1, 3 (S.D.N.Y. 2022) (quotation omitted). This breach-of-contract case did not generate precedent-setting decisions. Instead, it was "simply an application of the unique facts of th[e] case to well-established legal standards." *Viera*, 595 F. Supp. 3d at 3. The public interest does not favor maintaining a decision "resolv[ing] a private dispute" by which "no non-parties would be impacted." *Id.*

**IV. The Court Should Dismiss This Case Without Prejudice**

If the Court vacates the default judgment, Plaintiffs request that the Court dismiss the underlying claims without prejudice. Under Rule 41, a court may dismiss an action "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Voluntary dismissal generally "will be allowed if the defendant will not be prejudiced thereby." *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (quotation omitted). The "mere prospect of a second lawsuit or some tactical disadvantage [to a defendant] is not sufficient legal prejudice to prevent a Rule 41(a)(2) dismissal." *Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996).

Here, PDVSA will not be prejudiced by dismissal without prejudice for largely the same reasons it will not be prejudiced by vacatur of the judgment. *See supra* at 9. PDVSA can only

benefit from dismissal of the claims that are the subject of the default money judgment. The "mere prospect" that Plaintiffs' could refile their claims cannot prevent dismissal. *Jaskot*, 167 F.R.D. at 373. And refiling is particularly unlikely to occur here, as it would make little sense for Plaintiffs, having vacated a judgment in their favor and sought dismissal of their meritorious claims, to turn around and sue PDVSA again. PDVSA, moreover, has entered into numerous court-endorsed stipulations dismissing without prejudice various bondholders' claims *before* they reached judgment. *See, e.g.*, *Multisuma Inv. Corp. v. Petróleos de Venezuela, S.A.*, No. 23-cv-9717 (S.D.N.Y. Aug. 16, 2024), ECF 41; *see also Aurelius Capital Master, Ltd. v. Petróleos de Venezuela, S.A.*, No. 655041/2023 (Nov. 22, 2023), Dkt. 14. There is no justification for a different result here.[3]

## CONCLUSION

Plaintiffs respectfully request that this Court grant their motion to vacate the default judgment and enter an order dismissing the case without prejudice.

[3] If the Court is not inclined to dismiss the claims without prejudice, Plaintiffs respectfully request that the Court not vacate the judgment.

Dated: April 18, 2025

Washington, DC

Respectfully submitted,

*/s/ Matthew D. McGill*
Matthew D. McGill
MMcGill@gibsondunn.com
Nick Harper (*pro hac vice*)
NHarper@gibsondunn.com
1700 M St., N.W.
Washington, DC 20036
(202) 887-3680

*Counsel for Plaintiffs Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., and Pharo Trading Fund, Ltd.*

**WORD COUNT CERTIFICATION**

I, Matthew D. McGill, certify that this memorandum complies with the word-count limitations in Local Rule 7.1(c) because it contains 3,168 words, excluding the caption, signature blocks, and this certificate. In preparing this certification, I have relied on the word-processing system used to prepare this memorandum.

Dated: April 18, 2025

*/s/ Matthew D. McGill*
Matthew D. McGill